UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-81260-CV-ALTMAN

**ARLISTER SHERRON RUSH**,

    *Petitioner*,

vs.

**SECRETARY, FLORIDA
DEPARTMENT OF
CORRECTIONS**,

    *Respondent*.

_____/

**ORDER**

    Arlister Sherron Rush, a state prisoner, has brought a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. *See* Petition [ECF No. 1].[1] The Magistrate Judge issued a Report and Recommendation, in which she suggested that the Petition should be dismissed as untimely. *See* Report [ECF No. 7]. The Report told the Petitioner that he "had fourteen (14) days [from] the date of service of [the Report]" to file his "specific written objections with the court" and warned him that his "[f]ailure to do so [would] bar a *de novo* determination" of "anything in the recommendation and [would also] bar an attack, on appeal, of the [Magistrate Judge's] factual findings[.]" *Id.* at 12. The Petitioner never formally objected to the Report. *See generally* Docket.

    Instead, on October 19, 2020, the Petitioner—now with the assistance of counsel—filed a "Motion to Declare Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court as Unconstitutional." *See* Motion [ECF No. 15]. In the Motion, the Petitioner argued that

---

[1] The Petitioner is no longer *pro se*. On October 13, 2020, attorney Joseph Andrew DiRuzzo, III, entered an appearance on the Petitioner's behalf. [ECF No. 13].

"allow[ing] a district court to raise a non-jurisdictional claims processing bar to a Section 2254 petition . . . without providing the state respondent an opportunity to file a responsive pleading[] violate[s] the federalism doctrine and/or the adversarial system." *Id.* at 2. That Motion likewise never challenged either the Report's legal conclusions or any of its factual findings. *See generally id.*

## THE LAW

When a magistrate judge's "disposition" has been properly objected to, district courts must review that disposition *de novo*. FED. R. CIV. P. 72(b)(3). But, when no party has timely objected, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72 advisory committee's notes (citation omitted). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). "A party filing objections must specifically identify those findings objected to and the specific basis for such objections." *Hidalgo Corp. v. J. Kugel Designs, Inc.*, 2005 WL 8155948, at *1 (S.D. Fla. Sept. 21, 2005). Therefore, the "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

## ANALYSIS

The Report determined that the Petition was untimely and concluded that its untimeliness couldn't be justified either by equitable tolling or by the doctrine of actual innocence. The Petitioner never formally objected to *any of* these findings—not in his lawyer's Motion nor elsewhere. He didn't, for instance, proffer a basis for equitable tolling or suggest that he's "actually innocent" of the crimes with which he was charged.[2] And so, having carefully reviewed the Petition, the record, and the governing law—and finding no "clear error" in the Report—the Court now adopts the Report's findings and conclusions in full.[3] Nevertheless, the Court will treat the Motion as an objection *to the process* by which the Magistrate Judge arrived at her conclusions—and, in that way, will adjudicate the merits of the Motion *de novo*.

In the Motion, the Petitioner asks a seemingly simple question: "Does interpreting Rule 4 to allow a district court to raise a non-jurisdictional claims processing bar to a Section 2254 petition, and then dismiss the petition without providing the state respondent an opportunity to file a responsive pleading, violate the federalism doctrine and/or the adversarial system?" Motion at 2.

---

[2] The Report found that the "Petitioner presents no new evidence, let alone any new reliable evidence, to support a claim of actual innocence." Report at 7 (cleaned up). And, because the Petitioner never objected to this finding, the Court adopts it here.

[3] In different circumstances, it's true, the Court might have been inclined to look beyond the Motion's label and, perhaps, to recharacterize it as a properly-filed objection to the Report's factual or legal determinations. But, for three reasons, the Court will not do so here. *First*, the Petitioner is not proceeding *pro se*. To the contrary, he's represented by experienced counsel, who (presumably) made a strategic choice to file the Motion in lieu of an objection. *Second*, and relatedly, nothing in the Motion even arguably challenges any of the Report's findings—and so, it's not at all clear that having this Court recharacterize the Motion in this way is what the Petitioner (or his lawyer) wants. *Third*, the appellate courts have admonished district judges to be wary of recharacterizing habeas filings. *See, e.g.*, *Golfin v. Sec'y, Fla. Dep't of Corr.*, 276 F. App'x 908, 908 (11th Cir. 2008) ("[W]e will not as *de facto* counsel for a *pro se* litigant."); *cf. Castro v. United States*, 540 U.S. 375, 386–88 (2003) (Scalia, J., concurring) (reminding courts not to *recharacterize* habeas petitions since "even fully informed district courts that try their best not to harm *pro se* litigants by recharacterizing may nonetheless end up doing so because they cannot predict and protect against every possible adverse effect that may flow from recharacterization").

The answer, the Petitioner says, is yes. *Id*. Recognizing, however, that the Eleventh Circuit's construction of Rule 4 allows precisely this form of *sua sponte* dismissal, the Petitioner (primarily) relies on three Supreme Court cases for his position that Rule 4 is constitutionally "suspect." *Id.* at 2, 4 (citing *Wood v. Milyard*, 566 U.S. 463, 471 (2012); *Holland v. Florida*, 560 U.S. 631, 643 (2010); *Day v. McDonough*, 547 U.S. 198, 205–06 (2006)). Unfortunately for the Petitioner, none of these cases says any such thing. To the contrary, they strongly suggest the opposite.

Take, for instance, *Day*—which "concern[ed] the authority of a U.S. District Court, on its own initiative, to dismiss as untimely a state prisoner's petition for a writ of habeas corpus." *Day*, 547 U.S. at 201. In its response to Day's § 2254 petition, the State of Florida "agreed the petition was timely because it was filed after 352 days of untolled time." *Id*. (cleaned up). But, "[i]nspecting the pleadings and attachments, a Federal Magistrate Judge determined that the State had miscalculated the tolling time." *Id*. As the magistrate judge saw things, "[u]nder Circuit precedent, the untolled time was 388 days, rendering the petition untimely by some three weeks." *Id*. "After affording the petitioner an opportunity to show cause why the petition should not be dismissed for failure to meet the statutory deadline, and finding petitioner's responses inadequate, the Magistrate Judge recommended dismissal of the petition." *Id*. The district court then "adopted the Magistrate Judge's recommendation, and the Court of Appeals affirmed, concluding that a concession of timeliness by the state that is patently erroneous does not compromise the authority of a district court *sua sponte* to dismiss a habeas petition as untimely, under AEDPA." *Id*. (quoting *Day v. Crosby*, 391 F.3d 1192, 1195 (11th Cir. 2004) (per curiam)) (cleaned up).

The Supreme Court affirmed. In so doing, it held that district courts should be permitted to "exercise [] discretion in each case to decide whether the administration of justice is better served by dismissing the case on statute of limitations grounds or by reaching the merits of the petition."

4

*Id.* at 208 (cleaned up); *see also id.* at 209 ("In sum, we hold that district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition."). Notably, the Court acknowledged the alternative the Petitioner espouses here: "that the Magistrate Judge, instead of acting *sua sponte*, might have informed the State of its obvious computation error and entertained an amendment to the State's answer." *Id*. But the Court refused to require this alternative "route," reasoning that, since "an amendment to the State's answer might have obviated this controversy, we see no dispositive difference between that route, and the one taken here." *Id*. (cleaned up).

*Day*, then, implicitly rejected the position the Petitioner advances here—viz., that the district court cannot raise AEDPA's limitations bar *sua sponte*. And it parried the kinds of concerns the Petitioner now raises by noting that "[t]he AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time." *Id.* at 205–06 (quoting *Acosta v. Artuz*, 221 F.3d 117, 122 (2d Cir. 2000)) (cleaned up). The Supreme Court did, however, cabin its decision to situations in which the "federal court confronted *no* intelligent waiver on the State's part, only an evident miscalculation of the elapsed time under a statute designed to impose a tight time constraint on federal habeas petitioners." *Id*. at 202 (cleaned up) (emphasis added). It thus left unanswered the distinct question of whether a district court, faced with a state's *knowing* waiver[4] of AEDPA's limitations bar, could nevertheless rely on a petition's untimeliness to dismiss a habeas petition.

---

[4] The Court has long distinguished the concepts of knowing waiver and forfeiture. "The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous. Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right.'" *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 n.1 (2017) (cleaned up).

And this was precisely the question the Court answered six years later in *Wood*. In that case, "the State twice informed the U.S. District Court that it would not challenge, but is not conceding, the timeliness of Wood's habeas petition." *Wood*, 566 U.S. at 465 (cleaned up). Because of this waiver, the district court ignored the (potential) limitations defense and proceeded to dismiss Wood's petition *on the merits*. *Id*. On appeal, however, the Tenth Circuit raised the limitations defense *sua sponte* and then "affirmed the denial of Wood's petition, but solely on the ground that it was untimely." *Id*.

The Supreme Court granted certiorari and asked: "Does court discretion to take up timeliness hold when a State is aware of a limitations defense, and intelligently chooses not to rely on it in the court of first instance?" *Id*. "The answer *Day* instructs is 'no': A court is not at liberty, we have cautioned, to bypass, override, or excuse a State's deliberate waiver of a limitations defense." *Id*. In saying so, the Court noted that, "'[o]rdinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto.'" *Id*. at 470 (quoting *Day*, 547 U.S. at 202). The Court then acknowledged the two exceptions it had carved out in *Day* and an earlier case, *Granberry v. Greer*, 481 U.S. 129 (1987).

In *Granberry*, the Court had allowed the state, on appeal, to argue "for the first time that the petition should be dismissed because the petitioner had failed to exhaust relief available in state court." *Wood*, 566 U.S. at 470 (citing *Granberry*, 481 U.S. at 130). The Court justified this first exception by pointing out that the "exhaustion doctrine . . . is founded on concerns broader than those of the parties; in particular, the doctrine fosters respectful, harmonious relations between the state and federal judiciaries." *Id.* at 471. Turning to the second exception (from *Day*), the Court reiterated "'that district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition.'" *Id*. at 472 (quoting *Day*, 547 U.S. at 209). It countenanced

6

this second exception "because AEDPA's statute of limitations, like the exhaustion doctrine, 'implicates values beyond the concerns of the parties.'" *Id*. (quoting *Day*, 547 U.S. at 205) (cleaned up).

But, for two reasons, the Tenth Circuit had overstepped its discretion when it overrode the state's deliberate waiver of the limitations bar. *First*, "[a]lthough a court of appeals has discretion to address, *sua sponte*, the timeliness of a habeas petition, appellate courts should reserve that authority for use in exceptional cases." *Id.* at 473. Why? Because "[d]ue regard for the trial court's processes and time investment is . . . a consideration appellate courts should not overlook." *Id*. That is: "It typically takes a district court more time to decide a habeas case on the merits, than it does to resolve a petition on threshold procedural grounds." *Id*. And so, "[w]hen a court of appeals raises a procedural impediment to disposition on the merits, and disposes of the case on that ground, the district court's labor is discounted and the appellate court acts not as a court of review but as one of first view." *Id*. at 474. *Second*, "[t]he State was well aware of the statute of limitations defense available to it and of the arguments that could be made in support of the defense." *Id*. Nevertheless, it "twice informed the District Court that it will not challenge, but is not conceding the timeliness of Wood's petition." *Id*. "Essentially, the District Court asked the State: Will you oppose the petition on statute of limitations grounds? The State answered: Such a challenge would be supportable, but we won't make the challenge here." *Id*. To summarize, then, where the state, "[a]fter expressing its clear and accurate understanding of the timeliness issue," waives the limitations defense—and where the district court then relies on that waiver to adjudicate the petition on its merits—*the appellate court* isn't free to resurrect the defense and dismiss the petition as untimely. *Id.*

7

Neither aspect of *Wood*'s holding applies here. *First*, this case is still in the district court—and the *district court* is dismissing the Petition as untimely—so there's no need to worry about the appellate court "discount[ing]" the "district court's labor" and acting "as a court . . . of first view" by raising a limitations bar the district court had agreed to disregard. *Second*, the State hasn't waived the limitations defense—not knowingly nor deliberately nor in any other way. *Wood* thus does not help the Petitioner here.

Finally, *Holland* has nothing to do with our case. There, the Supreme Court agreed with "all 11 Courts of Appeals that have considered the question" and "h[e]ld that § 2244(d) is subject to equitable tolling in appropriate cases." *Holland*, 560 U.S. at 645. *Holland*, it's true, emphasized "[t]he importance of the Great Writ, the only writ explicitly protected by the Constitution, Art. I, § 9, cl. 2," and "counsel[ed] hesitancy before interpreting AEDPA's statutory silence as indicating a congressional intent to close courthouse doors that a strong equitable claim would ordinarily keep open." *Id*. at 649. But, in reflecting on these broad principles, *Holland* cited *Day* approvingly, *see, e.g.*, *id*. at 648, and never (even remotely) purported to abrogate or overrule any aspect of *Day*'s holding.

In short, not one of the three Supreme Court cases the Petitioner cites supports his position in the least. But, even putting the Supreme Court aside for a moment, the Petitioner does precious little to circumvent the Eleventh Circuit's decision, from earlier this year, in *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649 (11th Cir. 2020) ("*Paez II*")—which rejected the very same position he now advances here. In *Paez II*, the petitioner "filed a § 2254 petition" challenging his sentence and asserting that he was "actually innocent of the crimes charged." *Id*. at 650. As here, the district court referred the petition to the magistrate judge who, under Rule 4 of the Rules Governing Section 2254 Proceedings in the United States District Courts (the same rule at issue here),

compared "[t]he dates Mr. Paez gave in his petition together with those reflected on the electronic dockets." *Id*. at 651. "Based on those dates, the magistrate judge recommended *sua sponte* dismissing Mr. Paez's petition under Rule 4 without ordering the Secretary to respond." *Id*. The district court adopted the magistrate judge's report, and the petitioner appealed. *Id*.[5]

After concluding that the magistrate judge was entitled to take judicial notice of the dates in the state court's docket sheets, *id*. at 652, the Eleventh Circuit turned to the question presented here: "whether the District Court erred in *sua sponte* dismissing Mr. Paez's § 2254 petition without ordering the Secretary to respond," *id.* at 653. For three reasons, the court "h[e]ld that the District Court did not err by *sua sponte* dismissing Mr. Paez's § 2254 petition after giving him notice of its decision and an opportunity to be heard in opposition." *Id*. *First*, "the text of Rule 4 does not restrict summary dismissals to merits-based deficiencies." *Id*. Instead, "[b]oth a procedural bar and a merits-based deficiency could lead a district court to conclude that the petitioner is not entitled to relief." *Id*. at 654 (cleaned up). *Second*, in adopting Rule 4, the Advisory Committee considered and rejected "the suggestion that an answer should be required in every habeas proceeding[] . . . , saying that district courts have a duty to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." *Id*. (cleaned up). *Third*, "our interpretation of Rule 4 is aligned with Supreme Court precedent." *Id*. On this point, the court, citing *Day*, elaborated as follows:

> [T]he Supreme Court confronted the question of whether a federal court lacks authority, on its own initiative, to dismiss a habeas petition as untimely, if the State has answered the petition without contesting its timeliness, or has erroneously conceded the timeliness issue. The Supreme Court ruled that a district court may act on its own initiative to dismiss a petition in such a circumstance, provided the court accords the parties fair notice and an opportunity to present their positions. The Supreme Court rejected the petitioner's countervailing interpretation of Rule

---

[5] On appeal, Mr. Paez was represented by the same lawyer who now represents the Petitioner in our case. *See* Order, *Paez v. Sec'y, Fla. Dep't of Corr.*, No. 16-15705 (11th Cir. May 23, 2018).

> 4, in part because it would make it nearly impossible for courts to raise AEDPA's time bar *sua sponte*. This reasoning applies with even greater force at the Rule 4 stage, where district courts must dismiss petitions that plainly present no entitlement to review.

*Id*. (cleaned up). And, after citing to several similar decisions from the Sixth, Ninth, and Tenth Circuits, the court concluded that "the District Court did not abuse its discretion when it dismissed Mr. Paez's § 2254 petition without ordering the Secretary to respond in some form." *Id*. at 655.

Given *Paez II*'s expansive reasoning, there's not much more to say here. Nevertheless, hoping to salvage a thread from the embers of his (rejected) position in *Paez II*, the Petitioner's lawyer argues that "*Paez* does not control the outcome of this case" because, in rejecting Mr. Paez's claims, the Eleventh Circuit never considered *the constitutionality* of Rule 4. *See* Motion at 15. In saying so, however, the Petitioner's lawyer conveniently disregards the arguments he advanced in *Paez I* and *II*—and, by extension, ignores *Paez II*'s central teaching.

The decision we've come to know as *Paez II* was, as the name implies, the Eleventh Circuit's second go at the case. The *Paez* panel had originally ruled in Mr. Paez's favor—holding that "Rule 4 and *Day* make no allowance for a district court to dismiss a § 2254 petition on timeliness grounds without first ordering the State to respond in some way." *Paez v. Sec'y, Fla. Dep't of Corr.*, 931 F.3d 1304, 1311 (11th Cir. 2019) ("*Paez I*"), *vacated by* 944 F.3d 1327 (11th Cir.), *and superseded by Paez II*. When the State petitioned the court for en banc review, *see generally* Petition for Rehearing En Banc, *Paez v. Sec'y, Fla. Dep't of Corr.*, No. 16-15705 (11th Cir. Aug. 21, 2019), Mr. Paez (through counsel) filed a Response—in which he made the very same constitutional argument the Petitioner's lawyer offers here, *see* Response in Opposition to the State's En Banc Petition & Conditional Cross-Petition En Banc at 9, *Paez v. Sec'y, Fla. Dep't of Corr.*, No. 16-15705 (11th Cir. Nov. 6, 2019) ("Does interpreting Rule 4 to allow a district court to raise a non-jurisdictional claims processing bar to a Section 2254 petition, and then dismiss the

10

petition without providing the state respondent an opportunity to file a responsive pleading, violate the federalism doctrine?"). If the preceding parenthetical quotation sounds familiar, that's because it's virtually identical to the principal argument the Petitioner's lawyer pushes in our case. In response to this back-and-forth, of course, the *Paez* panel vacated *Paez I*, *see Paez*, 944 F.3d 1327, and issued *Paez II*—in which it rejected Mr. Paez's claims, including (as relevant here) any claim that the district court had erred in dismissing his case *sua sponte*, *see generally Paez II*, 947 F.3d at 655 ("For these reasons, the District Court did not abuse its discretion when it dismissed Mr. Paez's § 2254 petition without ordering the secretary to respond in some form.").

Now, the Eleventh Circuit, it's true, didn't couch its decision in *constitutional* terms. But a careful reading of its holding—and the cases on which it relies—leaves no room for a different result here. *Paez II*, after all, did not restrict itself to the procedural viability of the district court's decision to take judicial notice of certain state-court files. Instead, as we've said, it asked in general terms "whether the District Court erred in *sua sponte* dismissing Mr. Paez's § 2254 petition without ordering the Secretary to respond." *Id*. at 653. Had the court agreed with the Petitioner's view that Rule 4 is unconstitutional, *Paez II* would have come out the other way. That is, if Rule 4's grant of *sua sponte* dismissal authority were unconstitutional, then (it almost goes without saying) the Eleventh Circuit could not have concluded that "the District Court acted *properly* . . . when it *sua sponte* dismissed the petition without ordering a response from the Secretary." *Id*. at 651 (emphasis added).[6]

---

[6] In *Paez*, to be sure, the Petitioner's lawyer submitted his constitutional claim only in response to the State's en banc petition. And so, in a very technical sense, that constitutional issue wasn't "before" the panel when it vacated *Paez I* and issued *Paez II*. But *Paez II* squarely held that it was "proper" for the district court, in these circumstances, to dismiss a habeas petition *sua sponte*. If the Petitioner is right—if that kind of *sua sponte* dismissal were unconstitutional—then the Circuit would not have said that it was "proper." And the fact that, in *Paez*, the Petitioner's lawyer had advanced his constitutional claim *before Paez II* came out belies any argument the Petitioner might

11

And this makes sense. The Petitioner, let's be candid, has some difficulty delineating the precise contours of the constitutional violation he thinks occurred here. True, the Petitioner generally invokes "the federalism doctrine and/or the adversarial system[.]" Motion at 2. And, he adds, Rule 4 allows federal courts to "impose" affirmative defenses on (unwilling) states, to "override" state decision-making, and to "assert affirmative defenses *on behalf* of State litigants." *Id*. at 8–9 (emphasis added). But that's just not the case. As we explain more fully below—q.v. our discussion of state waiver and the doctrine of tacit consent—*Paez II* allows a court to serve notice of its intent to raise the limitations bar on the state; and, where the state elects not to object, courts may draw the natural inference: that the state didn't object precisely because it intended to raise the limitations defense itself. As *Paez II* makes plain, then, this kind of *sua sponte* dismissal— the kind that grants the petitioner an opportunity to respond, that serves notice of the limitations defense on the state, and that follows the state's tacit consent to the imposition of that defense— imposes nothing on (and asserts nothing on behalf of) the state. It thus results in no separation-of-powers violation at all.

And so, when a habeas petition is (as here) unambiguously untimely, it's not clear why the magistrate judge's refusal to permit the state to pile on, as it were, results in any constitutional violation at all (or, for that matter, an Article III injury). It would be one thing, of course, for the magistrate judge to *preclude* the petitioner from advancing his claims or from defending himself against attack. It's quite another to say that, after giving the petitioner a full and fair opportunity to take his best shot—and having found that shot plainly (and, as here, indisputably) insufficient— the magistrate judge had to give the state a chance to, so to speak, kick a horse that's dead or

---

make to the effect that, perhaps, the Eleventh Circuit only upheld the propriety of *sua sponte* dismissals because no had raised—and so, the judges had not considered—the possibility that the process might be unconstitutional.

(inexorably) dying.[7] Viewed in this light, what the Petitioner is really asking for is a chance to watch the State fumble or give the ball away—either by failing to offer a defense it should have raised or else by voluntarily waiving a defense it could have advanced. It's here—at its core—that the Petitioner's argument falls apart, because *Day* and *Paez II* make clear that this Court need not wait for either possibility.

Starting with fumbles. The Supreme Court has been pellucid that the district court need not wait to see if the State fails to make a potentially-dispositive argument. In *Day*, after all, the Supreme Court held that, in adjudicating a § 2254 petition, the district court can even go so far as to correct the state's "computation error"—without asking the state to amend its response—so long as the court affords the "parties fair notice and an opportunity to present positions." *Day*, 547 U.S. at 209–10. And the Petitioner (notably) never contends that this Court has failed to give *him* "fair notice and an opportunity to present [his] positions." *See generally* Motion. Nor can he. As the *Paez II* Court noted, in words that apply with equal force here: "Mr. Paez was provided ample notice and opportunity to explain why his petition was timely in his form petition and again when he was given the opportunity to respond to the magistrate judge's Report and Recommendation that his petition be summarily dismissed as untimely." 947 F.3d at 655 (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998) (holding that the plaintiff "was afforded both notice and a reasonable opportunity to oppose" the finding of procedural default when he was given a chance to object to the magistrate judge's report and recommendation, which had "placed [him] on notice

---

[7] At one point, the Petitioner seems to suggest that courts *must* order states to respond to habeas petitions because those responses might reveal that the parties had entered into a tolling agreement or uncover certain unspecified "events unbeknownst to district judges that would preclude dismissals based on claims-processing rules." Motion at 3–4. Notably, the Petitioner never says that *he* entered into any such tolling agreement or that *his* case involves any such "events." And, of course, there's nothing in Rule 4 (or, for that matter, in *Day* or *Paez II*) that would prevent *petitioners* from alerting courts to the existence of any such "agreements" or "events."

that procedural default was a potentially dispositive issue")). As in *Paez II*, the Petitioner was given fourteen days to object to the Magistrate Judge's factual and legal conclusions. The Report thus placed him on notice that the Petition's untimeliness was a potentially dispositive issue. Instead of objecting, he filed this Motion. That's really the end of the matter.[8]

Nor need the Court ask the State to respond in order to determine whether it intends to waive the limitations bar. *See id.* ("[T]he Secretary was notified of the court's action and had an opportunity to respond, including an opportunity to inform the District Court if it intended to waive the timeliness defense. The Secretary remained silent. To this day, no one contests that the petition was untimely, and the State has never indicated a desire to waive the limitations bar. The District Court thus complied with *Day* and Rule 4 and its dismissal was not an abuse of discretion."). As in *Paez II*, this Court served the Magistrate Judge's Report on the State. *See generally* Docket (showing the service email for the Attorney General's Office). The State's response? Silence. *Qui tacet consentit*. Consistent with *Day* and *Paez II*, we can safely assume that the State has remained silent precisely because it accedes to the Report's conclusions.[9]

---

[8] The Petitioner's lawyer cites several non-habeas cases for the proposition that "[c]ourts generally lack the ability to raise an affirmative defense sua sponte." Motion at 9 (citing *Bond v. United States*, 564 U.S. 211 (2011); *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). But the Federal Rules of Civil Procedure govern habeas proceedings only "to the extent that they are not inconsistent with any statutory provisions or [the Rules Governing Section 2254 Cases]." *See* Rule 12 of the Rules Governing Section 2254 Cases. And Rule 4 of the Rules Governing Section 2254 Cases plainly authorizes district courts to dismiss cases *sua sponte* under the circumstances presented here. *See* Rule 4 of the Rules Governing Section 2254 Cases ("If it plainly appears from the petition and *any attached exhibits* that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." (emphasis added)); *see also Wood*, 566 U.S. at 472 ("Concluding that it would make 'scant sense' to treat AEDPA's statute of limitations differently from other threshold constraints on federal habeas petitioners, we held 'that district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition.'" (quoting *Day*, 547 U.S. at 209)).

[9] Under *Paez II*, then, the Petitioner's contention that "the state respondent . . . must *assert or waive* the one-year AEDPA time bar," Motion at 5 (emphasis added), is plainly mistaken. The

14

The Petitioner's citation to *In re Jackson*, 826 F.3d 1343, 1348–50 (11th Cir. 2016), for the contrary proposition is unavailing. *See* Motion at 6. In that case, the Eleventh Circuit granted Mr. Jackson leave to file a successive § 2255 motion—even though that motion would (very likely) prove untimely—because the district court had never before given Mr. Jackson "fair notice and an opportunity to present [his] positions" on the question of timeliness. *Jackson*, 826 F.3d at 1347. In so holding, the court noted that, "[a]t this early stage in a second or successive § 2255 case, Mr. Jackson has not yet filed a § 2255 motion. That means no lower court has yet considered in detail the facts of this case to determine whether they constitute extraordinary circumstances sufficient to warrant equitable relief [to excuse the limitations bar]." *Id.* at 1348–49 (cleaned up). In Mr. Jackson's case, this was no mere exercise in formality. Jackson, after all, was before the Eleventh Circuit on a request for permission to file a "second or successive" petition. While Jackson's case was pending in the Circuit, the one-year statute of limitations for his claim under *Johnson v. United States*, 576 U.S. 591 (2015), expired. *See Jackson*, 826 F.3d at 1347. *Jackson* thus stands for the straightforward and sensible proposition that the district court should allow a petitioner to submit his habeas petition in the first instance—thus affording the petitioner one chance either to establish its timeliness or else to justify its untimeliness—before dismissing it as untimely.

In our case, of course, the Petitioner has had both opportunities: He filed his § 2254 petition; and, once the Report determined that it was untimely, he had fair notice and an opportunity to challenge the Report's conclusions. He chose not to. He's thus conceded the untimeliness of his Petition, and he's waived his chance to proffer some equitable excuse for its untimeliness—two things Mr. Jackson never did. In short, nothing in *Jackson* (or any other case)

---

State is not limited to those two options and may, upon proper notice, *tacitly* consent to a time-bar dismissal.

prevents a district court from dismissing a habeas petition in the circumstances presented here—scilicet, where (1) the petitioner was allowed to file his petition; (2) the magistrate judge notified the petitioner that his petition was untimely (and not subject to any exception) and gave the petitioner 14 days to challenge that finding; and (3) the petitioner, by refusing to challenge the magistrate judge's factual or legal determinations, effectively conceded the time bar.[10]

* * *

One more thing: the Petitioner hasn't asked for either an evidentiary hearing or a certificate of appealability. *See generally* Petition; Motion. Had he asked, though, both requests would have been denied. Starting with the evidentiary hearing, the Petitioner's constitutional claim turns on the answers to *legal* questions and thus requires no factual development at all. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."). With respect to a certificate of appealability, as this Order indicates, the Petitioner cannot (in this Court's estimation) show that "jurists of reason would find it debatable whether the

---

[10] The Petitioner's reliance on two out-of-Circuit cases is equally misplaced. *See* Motion at 3 & n.1 (citing *Robinson v. Johnson*, 313 F.3d 128 (3d Cir. 2002); *McMillan v. Jarvis*, 332 F.3d 244 (4th Cir. 2003)). While the Third Circuit's decision in *Robinson* suggested that the timeliness of a habeas petition should be treated like any other affirmative defense, it never held that a district court was powerless to take the issue up *sua sponte*—in large measure because the state *had* responded in that case. *See Robinson*, 313 F.3d at 137. And, although the Fourth Circuit's ruling in *McMillan* discussed some of the pitfalls of engaging the timeliness calculus prematurely, it likewise never held that a district court was prohibited from evaluating a petition's timeliness *sua sponte*. To the contrary, *McMillan* affirmed the district court's *sua sponte* decision in that case to dismiss the habeas petition as untimely. *See McMillan*, 332 F.3d at 245 ("We hold that *Hill*'s notification requirement applies to habeas petitioners represented by counsel as well as those proceeding *pro se*, but we affirm the district court in this case because McMillan was ultimately afforded sufficient opportunity to be heard on the timeliness of his petition."). More fundamentally, both decisions preceded *Day*—which, as we've seen, squarely permitted district courts to impose a timeliness bar *sua sponte*. And neither case, it goes without saying, can override the binding effect of *Paez II* in this Circuit.

petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Petitioner, after all, hasn't even challenged the Report's determination that the Petition is time-barred.

Accordingly, the Court hereby **ORDERS and ADJUDGES** as follows:

(1) The Report [ECF No. 7] is **ADOPTED**.

(2) The Petition [ECF No. 1] is **DISMISSED** as untimely.

(3) The Motion [ECF No. 15] is **DENIED**.

(4) Any requests for an evidentiary hearing or a certificate of appealability are **DENIED**.

(5) The Clerk of Court shall **CLOSE** this case.

(6) Any other pending motions are **DENIED as moot**.

(7) All deadlines are **TERMINATED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 28th day of December 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record